**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PHILADELPHIA INDEMNITY INSURANCE
COMPANY a/s/o HILLSIDE COMMONS ONEONTA,
LLC,                                                                    6:25-cv-1096 (BKS/MJK)

                                    Plaintiff,

v.

UPONOR, INC.,

                                    Defendant.

**Appearances:**

*For Plaintiff:*
Lawrence Lambert
Frenkel Lambert Weisman & Gordon, LLP
53 Gibson Street
Bay Shore, NY 11706

*For Defendant:*
Patrick J. Pickett
Ahmuty, Demers & McManus
634 Plank Road, Suite 203A
Clifton Park, NY 12065

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.    **INTRODUCTION**

Plaintiff Philadelphia Indemnity Insurance Company, as subrogee of Hillside Commons

Oneonta, LLC, brought this action in state court against Defendant Uponor, Inc. (Dkt. No. 2).

The Complaint asserts state law claims for negligence, products liability, failure to warn, and

breach of express and implied warranties. (*Id.*). Defendant removed the action to this Court

based upon diversity jurisdiction. (Dkt. No. 1). Presently before the Court is Defendant's motion

1

to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. (Dkt. No. 6). Also before the Court is Plaintiff's cross-motion to amend the complaint. (Dkt. No. 13). The motions are fully briefed. (Dkt. Nos. 6-1; 13-2; 14). For the reasons that follow, Defendant's motion to compel arbitration is denied, and Plaintiff's cross-motion to amend is granted.

## II.    BACKGROUND[1]

Plaintiff Philadelphia Indemnity Insurance Company alleges that its subrogor, Hillside Commons Oneonta LLC, owned the subject building located at 150 Blodgett Avenue in Oneonta, New York. (Dkt. No. 2, ¶ 5). According to the allegations in the Complaint, Defendant Uponor, Inc., is the manufacturer and distributor of an "adapter fitting [ ] for certain PEX piping." (Dkt. No. 2, ¶¶ 7-8). Plaintiff alleges that, prior to April 24, 2024, the Uponor fitting "was purchased for" and installed in the Hillside Building. (Dkt. No. 2, ¶¶ 10, 12). Plaintiff further alleges that, on or about April 24, 2024, the fitting manufactured by Uponor "dezincified and failed, and as a result water leaked into and throughout the Hillside Building." (Dkt. No. 2, ¶ 13).

On May 31, 2024, Plaintiff's counsel contacted "Uponor North America" regarding the Hillside Building. (Dkt. Nos. 6-2, ¶ 5; 6-3, at 2). In their letter, Plaintiff's counsel informed Uponor North America that they had been retained "in connection with water damages sustained to several units" at the Hillside Building "involving a fitting [ ] manufactured by Uponor." (Dkt. No. 6-3, at 2). Plaintiff's counsel stated that they had "retained an expert to examine the aforesaid fitting" and were "providing Uponor with an opportunity to participate in the joint inspection of the fitting." (*Id.*). Plaintiff's counsel requested the name and contact information

---

[1] In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), which "requires a court to 'consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" *id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). Accordingly, only those facts relevant to deciding the motion at issue are set out below, and are drawn from the pleadings, affidavits, and exhibits attached thereto, to the extent that they would be admissible as evidence.

2

for any expert Uponor would be retaining, for scheduling purposes. (*Id.*). Plaintiff's counsel also asked Uponor to "place [their] liability insurer on notice of this loss" and to provide their insurance information. (*Id.*).

According to Stacey Bissel, Uponor's Senior Manager for Claims, Risk, and Insurance, Uponor "provides a limited warranty in connection with the sale of PEX and other plumbing products." (Dkt. No. 6-2, ¶ 4). The limited warranty that covers the subject fitting[2] "warrants to the owner of the applicable real property that [the specified Uponor product] shall be free from defects in materials and workmanship, under normal conditions of use when installed as part of a potable water distribution system." (Dkt. No. 6-6, at 2). The limited warranty also contains a "Warranty Claim Dispute Process" clause, which provides, in relevant part:

> In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area.

(Dkt. No. 6-6, at 3). The limited warranty further provides that, "[b]y the mutual agreement of the parties, it is expressly agreed that this limited warranty and any claims arising from breach of contract, breach of warranty, tort, or any other claim arising from the sale or use of Uponor's products shall be governed and construed under the laws of the State of Minnesota." (*Id.*).

Bissel characterizes the letter from Plaintiff's counsel as a "notice of claim," and states that "a warranty claim file was initiated by the Uponor Warranty team" in response. (Dkt. No. 6-2, ¶ 6). "The Uponor Warranty team sent Plaintiff's counsel a confirmation email regarding the initiation of the claim." (*Id.*; Dkt. No. 6-4). The confirmation email included a claim number, and

---

[2] Bissel states that Plaintiff's counsel "informed Uponor that the subject property included [sic] the subject fitting was constructed in or around 2014." (*Id.* ¶ 7 (citing Dkt. No. 6-5)). A copy of the limited warranty "in effect for installations made on the 2014 date claimed by the Plaintiff" is attached to Bissel's affidavit. (*See* Dkt. Nos. 6-2, ¶ 8; 6-6).

indicated that the "next step in the process" was "for you to ship us the underperforming part [ ] so that our lab can evaluate the parts for cause of failure." (Dkt. No. 6-4, at 2).

On June 23, 2025, Plaintiff commenced this action against Uponor in the Supreme Court of the State of New York, County of Otsego. (*See* Dkt. No. 2). The Complaint alleges that Defendant "is liable and indebted to plaintiff in the sum of at least $471,784.13 with interest from April 24, 2024 and for any additional payments issued by [P]laintiff for damages and losses sustained by Hillside as a result of the April 24, 2024 incident." (Dkt. No. 2, ¶ 29). On August 14, 2025, Defendant removed the action to this Court. (*See* Dkt. No. 1).

## III.    LAW GOVERNING ARBITRATION AGREEMENTS

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, provides that "[a] written provision in any [ ] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction [ ] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA thus reflects a "federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and puts them "upon the same footing as other contracts." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). To that end, the FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court [ ] for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Because the FAA "does not require parties to arbitrate when they have not agreed to do so," *Schnabel*, 697 F.3d at 118 (quoting *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)), a district court ruling on a motion to compel arbitration "must first determine whether an agreement to arbitrate exists between the parties." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (citing *Schnabel*, 697 F.3d at 118). "The question of whether the parties agreed to arbitrate is determined by state contract law." *Id.* This question is for the Court to decide because "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *See Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–301 (2010); *see also Schnabel*, 697 F.3d at 118 ("Inasmuch as the arbitrator has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate, the question of whether such an agreement exists and is effective is necessarily for the court and not the arbitrator." (citation omitted)).

## IV.   STANDARD OF REVIEW

On a motion to compel arbitration, the Court applies a "standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). This standard requires the Court to consider "all relevant, admissible evidence submitted by the parties," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017), which includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A); *see also Meyer*, 868 F.3d at 74. Based on this evidence, the Court "draw[s] all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229.

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman*, 49 F.4th at 101–02. "This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." *Id.* at 102. "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (quoting *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun*, 316 F.3d at 175). "If, however, the arbitrability of the dispute can be decided as a matter of law based on the undisputed facts in the record, the court 'may rule on the basis of that legal issue and avoid the need for further court proceedings.'" *See Diaz v. Wanrong Trading Corp.*, No. 25-cv-1575, 2025 WL 3119182, at *6, 2025 U.S. Dist. LEXIS 219784, at *15 (E.D.N.Y. Nov. 7, 2025) (quoting *Wachovia Bank Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011)).

## V.     DISCUSSION

Defendant moves to compel arbitration "based on the arbitration clause contained in the Uponor limited warranty." (Dkt. No. 6-1, at 2). Defendant contends that Plaintiff is "estopped from claiming the arbitration provisions of the limited warranty are not applicable to this dispute[,]" and that this dispute falls within the scope of the arbitration provision. (*Id.* at 6, 11-12). Plaintiff disagrees, arguing that Plaintiff's insured "did not agree to resolve disputes with Uponor by way of arbitration." (Dkt. No. 13-2, at 10). Plaintiff also moves to amend the complaint to increase damages and withdraw the cause of action seeking damages for breach of

6

express and implied warranties, arguing that this amendment would moot the pending motion to compel arbitration. (*Id.* at 16).

### A.      Motion to Compel Arbitration

As a preliminary matter, the Court notes that the record does not support the assertions underlying Defendant's motion. Defendant asserts that Plaintiff's insured "purchased the subject fitting distributed by" Defendant. (Dkt. No. 6-1, at 7). Defendant argues that, because Plaintiff's insured purchased the fitting, Plaintiff "is now estopped from arguing that the arbitration provision of the warranty is not applicable to them." (*Id.*). However, there is no evidence in the record supporting Defendant's assertion that Plaintiff purchased the fitting. The Complaint does not indicate who purchased the fitting. The Complaint merely states that "[p]rior to April 24, 2024, the Fitting, which was distributed by Uponor, was purchased for the Hillside Building." (Dkt. No. 1, ¶ 10).[3] A senior manager for Defendant asserts that it "provides a limited warranty in connection with the *sale* of PEX and other plumbing products." (Dkt. No. 6-2, ¶ 4 (emphasis added)). However, there are no facts in the record regarding the sale of the subject fitting, no evidence of any sales agreement, and no evidence of when or how the limited warranty came into existence.[4]

Defendant's sole argument is that Plaintiff is equitably estopped from avoiding arbitration because Plaintiff "undeniably seeks benefits under the Uponor limited warranty." (Dkt. No. 6-1,

---

[3] In Plaintiff's response brief, Plaintiff indicates that "Hillside did not construct the Building." (Dkt. No. 13-2, at 6). However, as Defendant points out, Plaintiff has not supported this assertion with evidence. (*See* Dkt. No. 14, at 1).

[4] As Plaintiff observes, the limited warranty also includes a "Transferability" provision that states: "This limited warranty may only be assigned by the original owner of the applicable real property and may not be assigned or transferred after the period ending ten (10) years following the Commencement Date." (Dkt. No. 13-2, at 11 (citing Dkt. No. 6-6, at 3)). There is no evidence that the warranty was ever "assigned or transferred" to Plaintiff or Plaintiff's insured within the meaning of the limited warranty, or that Plaintiff's insured is the "original owner of the applicable real property." (*See id.*).

at 10-11).[5] Defendant, citing to the choice of law provision in the limited warranty, asserts that Minnesota law applies to any dispute between the parties. (*Id.* at 5). But "[a]pplying [a] choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Flores v. Chime Fin., Inc.*, No. 21-cv-4735, 2022 WL 873252, at *4, 2022 U.S. Dist. LEXIS 52624, at *10 (S.D.N.Y. Mar. 23, 2022) (quoting *Schnabel*, 697 F.3d at 119). The Court cannot presume that Minnesota law applies because it cannot presume the choice-of-law clause is applicable. Plaintiff argues that the Court "should apply New York law, as opposed to Minnesota law, as [P]laintiff never executed any contract which contained a provision providing that Minnesota law would apply to a dispute between" Plaintiff and Defendant. (Dkt. No. 13-2, at 10).

"[A] federal court exercising diversity jurisdiction generally must apply the choice-of-law rules of the state in which the court sits." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013). "Applying New York's choice-of law analysis for contract claims, the Court must next consider whether an actual conflict exists between the state laws that are implicated." *Flores*, 2022 WL 873252, at *4, 2022 U.S. Dist. LEXIS 52624, at *10 (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). "Laws are in conflict '[w]here the applicable law from each jurisdiction provides different substantive rules.'" *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 604 (S.D.N.Y. 2016) (citing *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004)). "The differences must be relevant to the issue at hand, and

---

[5] In Defendant's reply memorandum, Defendant asserts for the first time that Plaintiff's insured is "an intended beneficiary" of the warranty and is bound as a "successor-in-interest" to the original owner's agreement to arbitrate. (Dkt. No. 14, at 3). But Defendant cites no legal authority to support its "intended beneficiary" argument, and there is no evidence that Plaintiff's insured is a "successor-in-interest" to any party that entered into an agreement to arbitrate. (*See id.* at 3-4). In any event, "[a]s a general rule, courts will not consider arguments raised for the first time in a reply brief." *See Est. of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 611 (S.D.N.Y. 2006) (citation omitted).

8

must have a significant *possible* effect on the outcome of the trial." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005) (internal citations and quotations omitted).

Defendant's estoppel argument relies on the theory that an entity "knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." *See Trina Solar US, Inc. v. Jasmin Solar Pty Ltd*, 954 F.3d 567, 572 (2d Cir. 2020); *NCMIC Ins. Co. v. Allied Pros. Ins. Co.*, 110 F.4th 1072, 1076 (8th Cir. 2024). Defendant contends that the doctrine of equitable estoppel in this context is recognized under both Minnesota and New York law. (*See* Dkt. No. 6-1, at 7). Under New York law, the "guiding principle" of the direct-benefit estoppel theory "is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause." *Trina Solar*, 954 F.3d at 572 (quoting *Belzberg v. Verus Invs. Holdings Inc.*, 999 N.E.2d 1130, 1136 (2013)). "The nonsignatory beneficiary must actually invoke the contract to obtain its benefit, or the contract must expressly provide the beneficiary with a benefit." *Id.* (citing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993)). *C.f. NCMIC*, 110 F.4th at 1076 (predicting that, "when faced with a defendant-signatory's attempt to compel a plaintiff-nonsignatory to arbitrate its claims," the Minnesota Supreme Court would hold that the signatory can compel the nonsignatory to arbitrate only if the nonsignatory "directly benefitted" from the agreement at issue; "[t]his is, in effect, to ask [ ] whether the nonsignatory knowingly s[ought] and obtain[ed] 'direct benefits' from the contract" (internal quotations and citation omitted)).

But even assuming Defendant is correct—that the doctrine of equitable estoppel in this context is recognized under both Minnesota and New York law— Defendant has failed to cite

any case law or identify any facts supporting the application of equitable estoppel on this record. There is nothing before the Court that suggests Plaintiff is relying on the limited warranty containing the arbitration clause, and Defendant's caselaw is not at all analogous to the facts of this case.

Defendant's principal argument is that Plaintiff is equitably estopped from avoiding arbitration because Plaintiff included a cause of action for breach of express and implied warranties in its Complaint. (Dkt. No. 6-1, at 6-11). Defendant contends that "Plaintiff unequivocally admits and acknowledges in the Complaint that the subject dispute involves the breach of the limited express warranty provided by Uponor." (*Id.* at 7). But the Complaint does not refer to or rely on a limited express warranty provided to the property owner. The Complaint alleges that Defendant "expressly and implicitly warranted *to the general public* that the [f]itting was merchantable in that it was fit for ordinary purposes and safe for its intended use." (*See* Dkt. No. 2, ¶ 26 (emphasis added)). The limited express warranty expressly disclaims the warranties of merchantability and fitness for a particular purpose. (Dkt. No. 6-6, at 3). Moreover, the Complaint seeks consequential damages, (*see* Dkt. No. 2), which are also expressly disclaimed in the limited express warranty, (*see* Dkt. No. 6-6, at 3).

In support of its argument, Defendant cites *Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357 (N.D.N.Y. 2000). In *Upstate Shredding*, the plaintiff company sued a manufacturer of a shredder drive system for breach of contract and breach of express and implied warranties. *Id.* at 359-60. The plaintiff also sued Waukesha, the manufacturer of the gas engines that were part of the shredder system, for breach of express and implied warranties. *Id.* Waukesha moved to compel arbitration, arguing that the "Express Limited Warranty [ ] provided to [the plaintiffs] contain[ed] an arbitration provision" which provided that the warranty

10

"extended to all owners in the original chain of distribution." *Id.* at 360. The plaintiffs argued that they could not be bound by the arbitration provision because they "were not aware of the existence of the Waukesha Express Limited Warranty" prior to the commencement of the action. *Id.* at 361.

But the court in *Upstate Shredding* observed that, in their complaint, the plaintiffs "allege[d] knowledge of, and reliance on, the terms and conditions of the Express Warranty at the time they purchased the gas engines." *Id.* at 363.[6] The plaintiffs took "an inconsistent position in connection with" the motion to compel arbitration, "[n]otwithstanding the clear and unambiguous language" in the complaint. *Id.* at 363. The court reasoned that plaintiffs sought to "have their cake and eat it too; they claim[ed] reliance on the Express Warranty to establish a claim for breach of the express warranty and, at the same time, disclaim[ed] reliance on that same warranty to avoid arbitration." *Id.* Accordingly, the court granted Waukesha's motion to compel arbitration. *Id.*

This case is readily distinguishable from *Upstate Shredding.* Unlike the plaintiffs in *Upstate Shredding*, Plaintiff does not allege that its insured purchased the fitting, nor does it allege "knowledge of, and reliance on, the terms and conditions" of the limited warranty in its Complaint. *See id.* There is no reference to the limited warranty in the Complaint. And the Complaint seeks consequential damages, (*see* Dkt. No. 2), which are expressly disclaimed in the warranty, (*see* Dkt. No. 6-6, at 3). To the extent Defendant argues Plaintiff attempted to avail itself of the warranty claim process described in the limited warranty when Plaintiff's counsel contacted "Uponor North America" regarding a joint inspection, (*see* Dkt. Nos. 6-1, at 3-4, 10-11; 6-3), that argument lacks merit; the letter from Plaintiff's counsel does not include any

---

[6] The plaintiffs in *Upstate Shredding* had apparently gone so far as to attach the relevant warranty to their complaint. *See id.* at 360 (noting that express warranty was attached to Plaintiff's amended complaint).

reference to the limited warranty or the warranty claim process described therein. (*See id.*). The confirmation email from Uponor's warranty team is not responsive to Plaintiff's counsel's request. (*See* Dkt. No. 6-4, at 2).[7]

Defendant has not provided any evidence of an agreement or any direct benefit gained by Plaintiff or its insured "that can be traced directly to [an] agreement containing the arbitration clause." *See Trina Solar*, 954 F.3d at 572. There is no record evidence that Plaintiff has ever "invoked" the limited warranty to obtain its benefit. Defendant has not therefore shown that Plaintiff is equitably estopped from avoiding arbitration. *See id.* at 572–73 (reversing and remanding where district court held nonsignatory company was estopped from avoiding arbitration clause in parties' agreement; nonsignatory company "surely benefited from the contractual relationship" between the signatories to the contract, "as it ultimately received solar panels" sold by one signatory to the other, but there was "no record evidence that [nonsignatory] ever invoked the Contract to demand delivery of the solar panels, and the Contract itself [did] not provide [the nonsignatory] any direct benefit"); *c.f. NCMIC*, 110 F.4th at 1078 (holding that defendant could not compel plaintiff to arbitrate its claims under a theory of direct-benefits estoppel where defendant failed to establish that plaintiff "directly benefitted" from agreement). Accordingly, Defendant's motion to compel arbitration is denied.

---

[7] Defendant also cites to *Damon v. StrucSure Home Warranty* as an example of a case applying direct benefits estoppel. (See Dkt. No. 6-1, at 9-10 (citing *Damon v. StrucSure Home Warranty, Ltd. Liab. Co.*, 2014-NMCA-116, 338 P.3d 123). But *Damon* is an opinion from the New Mexico Court of Appeals, applying New Mexico law. In any event, *Damon* is factually distinct from the case at bar. *See* 2014-NMCA-116, ¶¶ 3-4, 338 P.3d 123, 124 (holding that subsequent purchasers of home were equitably estopped from avoiding arbitration where homeowners "assert[ed] that the warranty 'induced' them to buy the home," and "initially filed a warranty claim" with defendant warranty administrator"). The other cases Plaintiff cites are also factually inapposite. (*See* Dkt. No. 6-1, at 9 (citing *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001) (affirming district court grant of motion to compel *signatory* to agreement arbitrate; signatory seeking to avoid arbitration was a party to the agreement containing an arbitration clause and had sued for breach of that contract); *M.A. Mortenson Co. v. Gem Mech. Servs.*, No. 06-2182, 2006 WL 1997367, at *3, 2006 U.S. Dist. LEXIS 48417, at *9 (D. Minn. July 14, 2006) (holding that defendant was equitably estopped from avoiding arbitration where defendant alleged, in a separate action, "that it took over" the relevant subcontracts containing an arbitration clause, and sought "payment for its work under the terms of [those] subcontracts"))).

### B.       Plaintiff's Cross-Motion to Amend

As noted above, Plaintiff has moved for leave to file and serve an amended complaint, which withdraws the fourth cause of action for breach of express and implied warranties and increases damages. (*See* Dkt. No. 13, at 1). Defendant objects to the cross-motion, arguing that "the removal of the breach of express warranty claim is being done in bad faith as part of legal gamesmanship." (Dkt. No. 14, at 6).

Under Federal Rule of Civil Procedure 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. See Fed. R. Civ. P. 15(a)(1)–(2). Rule 15(a)(2) requires that a court "freely give leave when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023).

Here, Plaintiff seeks to amend its complaint because it is not relying on the express warranty or an implied warranty, and in order to increase the damages amount. The Court does not find any bad faith, undue delay or undue prejudice and accordingly, the Court grants Plaintiff's request for leave to amend.

## VI.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to compel arbitration (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend (Dkt. No. 13) is **GRANTED,** and Plaintiff is directed to file its proposed amended complaint (Dkt. No. 13-9) as the amended complaint within seven days from the date of this Order.

**IT IS SO ORDERED.**

Dated: <u>March 17, 2026</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

14